STATE OF LOUISIANA       *       NO. 2022-KA-0742

VERSUS       *

      **COURT OF APPEAL**

SAMUEL M. HUNTER JR       *

      **FOURTH CIRCUIT**

      *

      **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 552-073, SECTION "H"
Honorable Camille Buras, Judge
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Karen K. Herman)

Samuel Hunter #585971
Louisiana State Penitentiary
2544 Tunica Trace
Angola, LA 70712

      APPELLANT, *PRO SE*

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

      COUNSEL FOR DEFENDANT/APPELLANT

JASON WILLIAMS
District Attorney
BRAD SCOTT
Assistant District Attorney
Orleans Parish
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR STATE OF LOUISIANA/APELLEE

**VERDICT AFFIRMED**
**SENTENCES AFFIRMED**
**REMANDED FOR LIMITED PURPOSE**

**JULY 6, 2023**

DLD
RLB
KKH

This is an appeal of a March 10, 2022 jury verdict which found Defendant/Appellant, Samuel M. Hunter, Jr. (hereinafter "Defendant" or "Junior"), guilty on one count each of second degree murder, obstruction of justice, and possession of a firearm by a convicted felon. He also appeals the corresponding sentences of life imprisonment, forty years, and twenty years, concurrently and without benefits, which the trial court imposed on August 16, 2022. After review, we affirm both the jury's verdict and the trial court's sentences. We also remand the case to the trial court for imposition of a mandatory fine in accordance with La. R.S. 14:95.1.

## BACKGROUND

On December 25, 2020, Anthony Bridges (hereinafter "Bridges") rode a bicycle down the 1700 block of Monroe Street in New Orleans, where he encountered a group of three men later identified as the Defendant, Samuel Hunter, Sr. (Defendant's father; hereinafter "Mr. Hunter Sr."), and Daniel Hunter, Defendant's cousin. Bridges offered to sell the men a handgun for the price of

1

$250.00, to which Defendant and Daniel Hunter agreed. Mr. Hunter Sr. and Bridges remained on Monroe Street while Defendant and Daniel Hunter drove to a nearby convenience store to secure cash for the transaction. The transaction took place when Defendant and Daniel Hunter returned. Video surveillance taken by a Real Time Crime Center (RTCC) camera located at the corner of Monroe and Green Streets revealed that shortly after the initial exchange occurred, Bridges asked Daniel Hunter to bring the gun back to him so that he might show him how to secure the faulty clip. Daniel Hunter obliged and after Bridges returned the weapon to Daniel Hunter, Bridges unexpectedly lunged toward Defendant and shoved or punched him. Notably, the video *does not* show that Bridges had possession of any firearm when he lunged at Defendant. In fact, the recording shows that almost simultaneously to lunging at Defendant, Bridges hastily turned away from the group and attempted to flee. The video then captures Defendant drawing a handgun from his hoodie, aiming it at the fleeing Bridges, and firing the weapon until he exhausted the ammunition. At this point, Bridges is seen lying motionless on the sidewalk. Thereafter, the footage shows Defendant and Daniel Hunter quickly leaving the scene of the incident while Mr. Hunter Sr. returns to performing a brake-job on a vehicle parked directly across Monroe Street.

On May 24, 2021, the State of Louisiana indicted Defendant on three counts: second degree murder in violation of La. R.S. 14:30.1 (Count 1); obstruction of justice in violation of La. R.S. 14:130.1(A)(1) (Count 2); and felon in possession of

a firearm in violation of La. R.S. 14:95.1 (Count 3).[1] Defendant pled not guilty to all charges and on March 10, 2022, a jury found Defendant guilty as charged on all three counts. The trial court denied Defendant's Motion for New Trial and, after delays were waived the Court imposed concurrent sentences of life imprisonment on Count 1, forty years on Count 2, and twenty years on Count 3, each without benefit of probation, parole, or suspension. This appeal timely followed.

## ERRORS PATENT

Appellate Courts review all criminal appeals for errors patent. *See* La. C.Cr.P. art. 920.

We have discovered one error patent upon review. In 2020, the statute governing the crime of possession of a firearm by a felon (Count 3) mandated a fine of not less than one thousand nor more than five thousand dollars. *See* La. R.S. 14:95.1. Here, the trial court failed to impose the mandatory fine for Junior's conviction of possession of a firearm by a convicted felon. This Court has previously held that under such circumstances, a case must be remanded to the trial court for the imposition of the mandatory fine. *See State v. Dorsey*, 2020-0029, (La. App. 4 Cir. 12/9/20), 312 So.3d 652. As such, we remand this matter to the trial court for the limited purpose of imposing a mandatory fine in compliance with La. R.S. 14:95.1.

---

[1] Daniel Hunter, the defendant's cousin, was also charged in this case. He pled guilty on October 26, 2021, to an amended charge of accessory to second decree murder. The State *nolle prosequi'd* two separate counts. Daniel Hunter is not part of this appeal.

**DISCUSSION**

Defendant alleges the following six (6) assignments of error[2]:

1. The State failed to prove that Defendant did not act in self-defense when he shot Bridges, or alternatively that the State only proved manslaughter rather than second degree murder;

2. The trial court erred in allowing the State to introduce evidence of the Defendant's prior convictions to show prejudicial bad character;

3. The trial court violated the Defendant's right to due process by shifting the burden of proof to the defense;

4. The trial court erred in overruling the defense's objections during the State's closing argument;

5. The trial court erred in allowing two alternate jurors to participate in jury deliberations; and

6. The trial court erred in commenting on and allowing the jury to review video evidence during jury deliberations.

***Assignment of Error No. 1 – Sufficiency of Evidence***

Defendant argues that the State presented insufficient evidence to prove that his actions did not constitute self-defense, or alternatively that the State failed to prove he committed second degree murder rather than manslaughter.

Appellate courts review the sufficiency of evidence used to support a conviction under the *Jackson* standard. *See Jackson v. Virginia*, 443 U.S. 307, 99

---

[2] The first four (4) assignments of error are counseled, while the final two (2) assignments of error were alleged *pro se*.

4

S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[T]he relevant question [under *Jackson*] is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. And because "[t]he principal criteria of a *Jackson* review is rationality[,]" *State v. Dukes*, 2019-0172, p. 7 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 753; (*citing State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988)), "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Alexis*, 2014-0327, p. 6 (La. App. 4 Cir. 12/3/14), 157 So.3d 775, 778, (*quoting State v. Wilson*, 2009-0304, p. 3 (La. App. 4 Cir. 2/17/10), 68 So.3d 1031, 1033 (internal citations omitted)).

"Second degree murder is the killing of a human being… [w]hen the offender has the specific intent to kill or to inflict great bodily harm…." La. R.S. 14:30.1. "A homicide is justifiable… [w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1).

When applying the *Jackson* standard to self-defense cases involving homicides, the pertinent question becomes "whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-

5

defense….” *State v. Matthews*, 464 So.2d 298, 299 (La. 1985); *see also State v. Stockstill*, 2019-01235, (La. 10/20/20); 341 So.3d 502.

Defendant argues that Bridges fired a weapon at Defendant while lunging toward him. Believing he was in imminent danger of losing his life or receiving great bodily harm, the shooting of Bridges was necessary. The jury rejected Junior's self-defense claims based on the evidence adduced at trial. The evidence included, but was not limited to: RTCC video of the entire incident; testimony of the investigating officers/detectives; testimony of a forensic pathologist who prepared the Autopsy Report; the Autopsy Report; and testimony of firearms and ballistics experts; and the testimony of the Defendant.

The RTCC camera captured the exact moment Bridges lunged at and allegedly fired a weapon at Defendant. The footage does not depict any smoke emanating from either of Bridges' hands at any point during the incident. At no time does the video show Bridges in possession of any weapon other than the pistol he sold to Defendant and Daniel Hunter, which was in the possession of Daniel Hunter at the time Bridges allegedly fired at Defendant. What the footage does show is Bridges attempting to flee after shoving Defendant and Defendant firing a weapon at Bridges until the ammunition was completely spent, leaving Bridges lying motionless on the sidewalk.

NOPD Detective Johnson, who investigated the scene, testified that the police found no weapon on or near Bridges' body after the incident. Dr. O'Sullivan, the forensic pathologist for the Orleans Parish Coroner's Office,

conducted Bridges' autopsy and testified that he had been shot twelve (12) times, eight (8) of which entered Bridges' body as he was facing away from Defendant. NOPD's ballistics and firearms expert, Kenneth Leary, Jr., testified that nineteen .40 caliber Smith and Wesson cartridge cases were recovered from the scene and he determined that all had been fired by the same weapon.

Despite the Defendant's testimony that the victim shot at him, the jury rejected the self-defense claim and found the State's evidence sufficient to convict Defendant of second degree murder. We agree. The RTCC video shows that Bridges was not in possession of a firearm when the shooting began or at any time thereafter. Additionally, testimony revealed that no gun was found on or near Bridges when the officers arrived on the scene. Dr. O'Sullivan's autopsy report and testimony found that eight (8) of the twelve (12) bullets that struck Bridges were fired into his back, and the firearms expert testified that the bullets were all fired from the same weapon. We find that the jury did not err in determining this evidence sufficiently disproved Defendant's claim of self-defense.

Defendant argues in the alternative that the evidence suggested proof of manslaughter rather than second degree murder. We find this argument is also without merit. Manslaughter is a homicide that would have been a murder under La. R.S. 14:30 or 14:30.1, "but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31.

7

The presence of "sudden passion" or "heat of blood" distinguishes manslaughter from murder. *State v. Lombard*, 486 So.2d 106, 110 (La.1986). Questions of provocation and time for cooling are for the factfinder to determine under the standard of the average or ordinary person with ordinary self-control. *State v. Leger*, 2005-0011 (La. 7/10/06), 936 So.2d 108. Appellate courts should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State v. Richardson*, 425 So.2d 1228 (La. 1983).

We find that Defendant's claim that he was in imminent danger of losing his life or receiving great bodily harm was not reasonable. All of the evidence reflected that the victim was unarmed. Accordingly, we find this assignment of error is without merit.

***Assignment of Error No. 2 – Prior Convictions***

Defendant argues that the State presented inadmissible evidence of his other crimes, wrongs, or acts to prove his character and show that he acted in conformity therewith.

Appellate courts review claims of prejudicial character evidence under the abuse of discretion standard. As such, absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C. E. art. 404(B)(1) will not be disturbed. *State v. Randolph*, 2016-0892, pp. 7, 11 (La. App. 4 Cir. 5/3/17), 219 So.3d 425, 431.

8

La. C.E. art. 404(B)(1) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Because such evidence poses a substantial risk of grave prejudice, it "is inadmissible unless the evidence has an independent relevancy besides simply showing a criminal disposition." *State v. Rubens*, 2010-1114, p. 21 (La. App. 4 Cir. 11/30/11), 83 So.3d 30, 46, (*quoting State v. Lafleur*, 398 So.2d 1074, 1080 (La.1981)). However, "every witness by testifying subjects himself to examination relative to his criminal convictions…." La. C.E. art. 609.1(A). "Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible." La. C.E. art. 609.1(C). The burden is on the defendant to show that he was prejudiced by the admission of other crimes evidence. *See State v. Randolph*, 2016-0892, pp. 7, 11 (La. App. 4 Cir. 5/3/17), 219 So.3d 425, 431.

Here, Defendant testified, which then subjected him to cross-examination which included his prior criminal convictions. On cross examination, the State questioned Defendant on whether he knew the names of the prior victims and whether Defendant used a gun during the commission of an armed robbery. Despite that the questioning may have exceeded the limitations contained in La. C.E. art. 609.1(C), we find the error was harmless. It is well-settled law that an error in the admission of other crimes evidence is subject to the harmless error rule. *See State v. Brown*, 2018-1999 (La. 9/30/21), 330 So.3d 199, 236, *cert. denied*, ⸺ U.S. ⸺, 142 S.Ct. 1702, 212 L.Ed.2d 596 (2022). The evidence here weighed

9

overwhelmingly in favor of the guilty verdicts and accordingly we find this assignment of error is without merit.

*Assignment of Error No. 3 – Burden of Proof*

Defendant argues that the State impermissibly shifted the burden of proof to Defendant on cross-examination.

During closing argument the Prosecutor made the following comments: "[Danny Hunter saw] whole escapade that you've just described, this theater you just described to the jury, just like your father saw it, correct? [And] Danny Hunter chose not to participate in this story you've concocted with your defense attorney[;]" "[a]nd there are people who could have come in and explained any missing details for you. And it just so happens most of them are related to him by blood[;]" "[f]our separate Hunters have chosen not to be a part of this story[;]" and a comment noting that Mr. Hunter Sr. continued working on Defendant's car right after the shooting and refused to speak to police. Defendant's objections to these comments were overruled.

We do not find that the comments shifted the burden of proof. The comments merely noted that Defendant's testimony was unsupported by corroborating evidence. We find the third assignment of error without merit.

*Assignment of Error No. 4 – Closing Argument*

Defendant argues that the State made improper closing arguments outside of the scope allowed by law.

La. C.Cr.P. art. 841(A) provides:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

In the State's closing argument, the prosecutor referenced deception in the courtroom and suggested to the jury that defense counsel's job was to twist, mislead, deceive and lie to the jury. The record does not reflect that Defendant made any objection, contemporaneous or otherwise, to the State's closing argument. As appeals are limited to objections made at trial, this Court cannot consider an assignment of error raised for the first time on appeal. Furthermore, a reviewing court "must be thoroughly convinced that the argument influenced the jury and contributed to the verdict before reversing a conviction based on misconduct during the closing arguments." *State v. Brazell*, 2017-0032 (La. App. 4 Cir. 4/18/18), 245 So. 3d 15, 32 (*citing State v. Martin*, 93-0285, p. 18 (La. 10/17/94), 645 So.2d 190, 200).

We do not find that the comments made by the State in closing and rebuttal argument affected the jury's verdict. Accordingly, we find the fourth assignment of error is without merit.

**Assignment of Error No. 5 – Alternate Jurors in Deliberations**

Defendant, *pro se*, contends that the trial court erroneously allowed two alternate jurors to participate in jury deliberations.

The *pro se* brief and record fail to provide any evidence to support this argument. As such, this assignment of error is without merit.

11

*Assignment of Error No. 6 – Judge's Comments During Deliberations*

Finally, *pro se*, Defendant avers that the trial judge committed reversible error by commenting on the evidence during deliberations.

There is no support for this argument in the record. The jury sent a note to the judge concerning certain evidence presented during the trial. The judge had the jurors return to the courtroom and advised them that she could not comment on the evidence. However, the jury was allowed to review the video of the incident in the courtroom. The trial judge made no improper comments on the evidence. Accordingly, this assignment of error is without merit.

## CONCLUSION

Considering the foregoing, we affirm the jury's verdict and the corresponding sentences imposed by the trial court. Further, we remand this matter to the trial court for the imposition of the mandatory fine in accordance with La. R.S. 14:95.1.

**VERDICT AFFIRMED**
**SENTENCES AFFIRMED**
**REMANDED FOR LIMITED PURPOSE**